ACCEPTED
01-14-00397-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/30/2015 10:43:57 AM
CHRISTOPHER PRINE
CLERK

**No. 01-14-00397-CR**

In the
**Court of Appeals**
For the
**First District of Texas**
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

1/30/2015 10:43:57 AM

CHRISTOPHER A. PRINE
Clerk

─────────◆─────────

**No. 1421621**
In the 338th Criminal District Court
Of Harris County, Texas

─────────◆─────────

**ANA TRUJILLO a.k.a ANA FOX**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

─────────◆─────────

STATE'S APPELLATE BRIEF

─────────◆─────────

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number: 24053741

**JOHN JORDAN**
**SARAH SEELY**
Assistant District Attorneys

1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone: (713) 755-5826
Fax Number: (713) 755-5809
Hervey_Melissa@dao.hctx.net

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 9.4(g) and Texas Rule of Appellate Procedure 39.1, the State requests oral argument only if appellant requests oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rules of Appellate Procedure 38.1(a) and 38.2(a)(1)(A), a complete list of the names of all interested parties, and the names and addresses of all trial and appellate counsel, is provided below:

*Complainant or Victim:*

**Stefan Andersson**

*Counsel for the State:*

**Devon Anderson**—District Attorney of Harris County

**Melissa P. Hervey**—Assistant District Attorney on appeal

**John Jordan; Sarah Seely; Melissa P. Hervey**—Assistant District Attorneys at trial

Harris County District Attorney's Office
1201 Franklin Street, Suite 600
Houston, Texas  77002

*Appellant or Criminal Defendant:*

**Ana Trujillo a.k.a Ana Fox**

*Counsel for Appellant:*

**Douglas M. Durham**—Defense Counsel on appeal

2800 Post Oak Boulevard, Suite 4100
Houston, Texas  77056

**John "Jack" Carroll**—Defense Counsel at trial

1419 Franklin Street
Houston, Texas  77002

**Tim Donahue**—Defense Counsel at trial

5555 West Loop South, Suite 395
Houston, Texas  77401

*Trial Judge:*

**Honorable Brock Thomas**—Presiding Judge of the 338th Criminal
District Court

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

IDENTIFICATION OF THE PARTIES ...................................................i

TABLE OF CONTENTS........................................................ ii

INDEX OF AUTHORITIES.......................................................iv

STATEMENT OF THE CASE....................................................1

STATEMENT OF FACTS ..............................................................1

SUMMARY OF THE ARGUMENT ....................................................6

REPLY TO APPELLANT'S FIRST POINT OF ERROR.........................................7

    **I.** *STANDARD OF REVIEW AND APPLICABLE LAW REGARDING A DEFENDANT'S SIXTH AMENDMENT RIGHT TO COUNSEL DURING THE TIMEFRAME FOR PREPARING, FILING, AND PRESENTING A MOTION FOR NEW TRIAL* ...............................................................7

    **II.** *APPELLANT HAS FAILED TO REBUT THE PRESUMPTION THAT SHE WAS ADEQUATELY REPRESENTED BY COUNSEL DURING THE TIMEFRAME FOR PREPARING, FILING, AND PRESENTING A MOTION FOR NEW TRIAL* ...............................................................10

REPLY TO APPELLANT'S SECOND POINT OF ERROR................................12

    **I.** *STANDARD OF REVIEW REGARDING THE DENIAL OF A DEFENDANT'S MOTION FOR MISTRIAL* ..................................................12

    **II.** *THE TRIAL COURT DID NOT ERR BY DENYING APPELLANT'S MOTION FOR MISTRIAL* ..................................................14

REPLY TO APPELLANT'S THIRD POINT OF ERROR ..................................18

    **I.** *STANDARD OF REVIEW AND APPLICABLE LAW REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL* ..................................................19

    **II.** *APPELLANT FAILED TO PROVE THAT HER TRIAL COUNSEL WAS DEFICIENT UNDER THE FIRST PRONG OF STRICKLAND* .........................22

    **III.** *APPELLANT FAILED TO PROVE THAT HER TRIAL COUNSEL'S ALLEGEDLY-DEFICIENT PERFORMANCE PREJUDICED HER UNDER THE SECOND PRONG OF STRICKLAND* .......................................26

CONCLUSION AND PRAYER .........................................................................30

CERTIFICATE OF COMPLIANCE ..................................................................32

CERTIFICATE OF SERVICE ...........................................................................33

APPENDIX A .....................................................................................................34

# INDEX OF AUTHORITIES

## CASES

*Anderson v. State*,
   193 S.W.3d 34 (Tex. App.—
   Houston [1st Dist.] 2006, pet. ref'd) ................................................................25

*Andrews v. State*,
   159 S.W.3d 98 (Tex. Crim. App. 2005) ............................................................21

*Archie v. State*,
   340 S.W.3d 734 (Tex. Crim. App. 2011) ..........................................................13

*Benson v. State*,
   224 S.W.3d 485 (Tex. App.—
   Houston [1st Dist.] 2007, no pet.) .....................................................................12

*Bone v. State*,
   77 S.W.3d 828 (Tex. Crim. App. 2002) ............................................................23

*Campos v. State*,
   Nos. 01-13-00415-CR, 01-13-00416-CR,
   01-13-00417-CR, 2015 WL 162123 (Tex. App.—
   Houston [1st Dist.] Jan. 13, 2015, pet. filed) ...................................................13

*Cooks v. State*,
   240 S.W.3d 906 (Tex. Crim. App. 2007) ................................................. 8, 9, 11

*Cox v. State*,
   389 S.W.3d 817 (Tex. Crim. App. 2012) ..........................................................22

*Crawford v. State*,
   355 S.W.3d 193 (Tex. App.—
   Houston [1st Dist.] 2011, pet. ref'd) ........................................................ 13, 14

*Frangias v. State*,
   413 S.W.3d 212 (Tex. App.—
   Houston [14th Dist.] 2013, no pet.) ...................................................................22

*Garcia v. State*,
   57 S.W.3d 436 (Tex. Crim. App. 2001) ............................................................23

*Garcia v. State*,
   97 S.W.3d 343 (Tex. App.—
   Austin 2003, pet. ref'd) ...................................................................................8, 9

*Goodspeed v. State*,
   187 S.W.3d 390 (Tex. Crim. App. 2005)......................................................21

*Green v. State*,
   264 S.W.3d 63 (Tex. App.—
   Houston [1st Dist.] 2007, pet. ref'd) ...........................................................8

*Hale v. State*,
   140 S.W.3d 381 (Tex. App.—
   Fort Worth 2004, pet. ref'd)......................................................................25

*Harrison v. State*,
   333 S.W.3d 810 (Tex. App.—
   Houston [1st Dist.] 2010, pet. ref'd) .........................................................21

*Hawkins v. State*,
   135 S.W.3d 72 (Tex. Crim. App. 2004)......................................................13

*Hernandez v. State*,
   No. 01-13-00825-CR, 2014 WL 6783753 (Tex. App.—
   Houston [1st Dist.] Dec. 2, 2014, no pet.) .................................................16

*Jackson v. State*,
   877 S.W.2d 768 (Tex. Crim. App. 1994).....................................................21

*Lee v. State*,
   779 S.W.2d 913 (Tex. App.—
   Houston [1st Dist.] 1989, pet. ref'd) .........................................................18

*Madden v. State*,
   No. 02-08-007-CR, 2009 WL 2857269 (Tex. App.—
   Fort Worth Sept. 3, 2009, pet. ref'd)........................................................17

*McMann v. Richarson*,
   397 U.S. 759 (1970) ..................................................................................19

*Mempa v. Rhay*,
   389 U.S. 128 (1967) ....................................................................................8

*Nenno v. State*,
   970 S.W.2d 549 (Tex. Crim. App. 1998).....................................................17

*Oldham v. State*,
   977 S.W.2d 354 (Tex. Crim. App. 1998)............................................. 8, 9, 11

*Ovalle v. State*,
   13 S.W.3d 774 (Tex. Crim. App. 2000).......................................................16

*Perez v. State*,
310 S.W.3d 890 (Tex. Crim. App. 2010)................................................................29

*Robertson v. State*,
187 S.W.3d 475 (Tex. Crim. App. 2006)................................................................20

*Rylander v. State*,
101 S.W.3d 107 (Tex. Crim. App. 2003)................................................................23

*Salinas v. State*,
163 S.W.3d 734 (Tex. Crim. App. 2005)................................................................20

*Smith v. State*,
17 S.W.3d 660 (Tex. Crim. App. 2000)...............................................................9, 11

*Stokes v. State*,
298 S.W.3d 428 (Tex. App.—
Houston [14th Dist.] 2009, pet. ref'd)....................................................................30

*Strickland v. Washington*,
466 U.S. 668 (1984) ...................................................................... 19, 20, 22

*Thompson v. State*,
9 S.W.3d 808 (Tex. Crim. App. 1999)..................................................... 20, 21, 22

*Thrift v. State*,
176 S.W.3d 221 (Tex. Crim. App. 2005)................................................................17

*Todd v. State*,
No. 05-95-00994-CR, 1998 WL 196187 (Tex. App.—
Dallas 1998, pet. ref'd).......................................................................................24

*Vann v. State*,
853 S.W.2d 243 (Tex. App.—
Corpus Christi 1993, pet. ref'd) ...........................................................................24

*Ward v. State*,
740 S.W.2d 794 (Tex. Crim. App. 1987)..................................................................9

*Weaver v. State*,
265 S.W.3d 523 (Tex. App.—
Houston [1st Dist.] 2008, pet. ref'd) .....................................................................21

*Webb v. State*,
232 S.W.3d 109 (Tex. Crim. App. 2007).................................................... 13, 14

## STATUTES

TEX. PENAL CODE ANN. § 9.31 ................................................................24

TEX. PENAL CODE ANN § 9.32 .................................................................24

TEX. PENAL CODE ANN. § 19.02(a)..........................................................24

TEX. PENAL CODE ANN. § 19.02(b)(1) ......................................................1

TEX. PENAL CODE ANN. § 19.02(b)(2) ......................................................1

TEX. PENAL CODE ANN. § 19.02(d)...........................................................24

## RULES

TEX. R. APP. P. 9.4(g)............................................................................ i

TEX. R. APP. P. 9.4(i)............................................................................32

TEX. R. APP. P. 38.2(a)(1)(A) ................................................................ i

TEX. R. APP. P. 39.1.............................................................................. i

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. VI.....................................................................7, 19

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

The State charged appellant by indictment with murder. (CR – 9);[1] *see* TEX. PENAL CODE ANN. § 19.02(b)(1); TEX. PENAL CODE ANN. § 19.02(b)(2). The jury found appellant guilty as charged in the indictment, and then assessed appellant's punishment at confinement in the Texas Department of Criminal Justice, Correctional Institutions Division, for life. (CR – 739, 751, 754-55); (RR X – 128); (RR XIII – 54-57). On April 11, 2014, the trial court sentenced appellant in accordance with the jury's verdict. (CR – 754-55); (RR XIII – 57-58). The trial court also entered an affirmative deadly weapon finding in the court's written judgment of conviction and sentence. (CR – 754-55). Appellant timely filed written notice of appeal on May 9, 2014. (CR – 758).

◆

## STATEMENT OF FACTS

Appellant and Stefan Andersson began dating late in the summer of 2012. (RR V – 54, 72-73). Their relationship was tumultuous, however, and they separated and reconciled several times. (RR XI – 205). In January or February

---

[1] The Clerk's Record consists of one volume, hereinafter referenced as (CR – [page number]). The Court Reporter's Record consists of nineteen volumes, which will be referenced as (RR [I-XIX] – [page number]). Exhibits offered and/or admitted at trial are contained within Volumes XIV-XIX of the Reporter's Record. State's Exhibits admitted at trial will be referenced as (RR [volume number] – SX [exhibit number]). Defendant's Exhibits admitted at trial will be referenced as (RR [volume number] – DX [exhibit number]).

2013, appellant was living on and off with James Wells and Wells' roommate, Chanda Ellison, in Wells' and Ellison's home, but also frequently stayed with Andersson in Andersson's condo unit at the Parklane, a high-rise condominium building. (RR X – 10-12). On May 27, 2013, Wells and Ellison kicked appellant out of their home after appellant bit Wells on the head and then got into a physical altercation with Ellison. (RR X – 12-20, 39-45, 48). Appellant returned to staying with Andersson, exclusively, but planned to soon move back to Waco, where appellant's parents still resided. (RR X – 20).

On June 8, 2013, appellant and Andersson began their day at the Hermann Park Golf Course clubhouse near the Parklane, where they ate and drank together into the afternoon. (RR V – 93-94, 101, 111); (RR VIII – 139, 143). Andersson and appellant then returned to the Parklane and, for several hours, Andersson helped appellant move boxes and suitcases filled with appellant's belongings— which appellant had retrieved from Wells' and Ellison's residence—into Andersson's storage unit and condo. (RR V – 228-29); *see* (RR XVI – SX 27-32). Later that evening, appellant and Andersson went to a bar called "Bar 5015[.]" (RR VII – 127); *see* (RR XVII – SX 223). Appellant and Andersson drank and socialized at Bar 5015 until around 1:30 AM, June 9, 2013, when Andersson called a taxicab to transport himself and appellant back to Andersson's condo. (RR V – 120-21); (RR VII – 125, 129).

2

On the cab ride home, appellant was intoxicated, "yelling, being loud, being demanding" about the route the driver was taking to the Parklane, and was angrily cursing at both Andersson and the driver. (RR V – 131-33, 162-64). Appellant continued her tirade when the cab arrived at the Parklane, belligerently yelling and cursing at the cab driver to the point that the driver wanted to call the police. (RR V – 137-39, 164). Andersson tried to mollify the cab driver while appellant stormed into the Parklane and, after shouting at Andersson to come inside, too, headed upstairs to Andersson's condo. (RR V – 137-38, 245-49); *see* (RR XVI – 33-34). Andersson—embarrassed, apologetic, and conciliatory—deliberately overpaid the cab driver to atone for the commotion that appellant had caused and then, at approximately 2:00 AM, dejectedly followed appellant to his unit. (RR V – 150, 165-66, 186, 250); *see* (RR XVI – SX 35-36).

Soon upon their return to Andersson's condo, appellant and Andersson got into a physical altercation in the living room. (RR VI – 107); *see* (RR VI – 16-24) (showing that Andersson's next-door neighbor overheard yelling and other sounds from the altercation beginning at 2:13 AM). During their struggle, appellant ripped large clumps of hair from Andersson's head and struck him, causing him to begin to bleed. (RR VI – 106-07, 112-15); *see* (RR XVII – SX 79-81, 83, 112-14). Andersson then moved towards the hallway leading to his bedroom as appellant grabbed one of her shoes—a blue, platform pump with a five-and-one-half-inch-

3

long heel—off of the floor.  (RR VI – 125); *see* (RR XVII – SX 115-16, 119, 126-31).  Appellant began battering Andersson in the head and face with her shoe as he backed towards the wall, and continued to strike him with the implement even as he lost his balance and fell to the hallway floor.  *See* (RR VI – 118, 122-24); (RR XVII – SX 116-18).  Appellant then climbed on top of Andersson and repeatedly pounded his head and face with the high-heeled shoe, spattering Andersson's blood all over the nearby walls and carpet, and onto herself.  (RR VI – 127-28, 139-57); *see* (RR XVI – SX 44-45); (RR XVII – SX 117-18, 122, 125, 136-38, 143, 145-46).  In all, appellant struck Andersson's head and face with her shoe a minimum of twenty-five times, dealing most of the hits while Andersson was already down on the floor.  (RR VI – 134, 149); (RR VII – 25-26); (RR VIII – 24, 76-84); *see, e.g.,* (RR XVII – SX 134, 169-75, 178).  In addition to those facial and cranial blows, appellant also struck Andersson with her shoe numerous times on his arms and hands as he attempted to defend himself from appellant's vicious onslaught.  *See* (RR VI – 129, 157-58); (RR VIII – 24, 84-98, 105, 110-11, 119); *see* (RR XVII – SX 139-42, 192-99).  Unable to defend himself, though, Andersson died from his severe head and facial trauma and significant blood loss as he lay on his hallway floor.  (RR VIII – 110-12); *see* (RR XVII – SX 117-18, 125).

Appellant called 911 at approximately 3:41 AM to report that she had been "assaulted" and to request assistance from the police.  (RR VI – 31); (RR VII –

21).  Officer Ashton Bowie with the Houston Police Department was dispatched to Andersson's residence to respond to the "assault-in-progress" call.  (RR VI – 29, 43-44).  Bowie rang the doorbell to Andersson's unit and appellant opened the door, at which point Bowie immediately observed that she was "covered in blood." (RR VI – 31, 64); *see* (RR XVI – SX 44-48).  Bowie asked appellant, "What's going on?" and appellant replied, "He was holding me and wouldn't let me go." (RR VI – 31, 51).  Appellant invited Bowie into the condo, where Bowie "immediately noticed [Andersson] lying on the floor" in the hallway of the unit. (RR VI – 32-33).  Bowie observed that Andersson's "face was covered in blood[,]" had a "lot of impact wounds[,]" and "looked swollen," and that "there was a large pool of blood" around his head—to the degree that Bowie initially believed that Andersson had been shot in the head.  (RR VI – 32-33, 50, 54).  Bowie noted that Andersson appeared like he "had probably been deceased for a while[,]" but Bowie radioed for emergency medical services (EMS) units to come to the condo anyway. (RR VI – 35, 51-52, 58-59).

EMS units soon arrived at Andersson's residence and pronounced Andersson dead on the scene, having found that Andersson was pale, cold to the touch, and had likely been dead for thirty minutes or longer.  (RR VII – 18, 31, 34-36, 40).  Appellant did not report any injuries to Bowie or any other police officer, or to the EMS technicians, and she did not receive treatment from EMS for any

5

injuries. (RR VI – 39, 59, 67-68); (RR VII – 16-17, 19, 32-33). Around 4:01 AM, a police officer took appellant into custody, escorted her downstairs and out of the Parklane, and detained her in a patrol car. (RR VI – 64-65); *see* (RR XVI – SX 37-38). The police later transported appellant to the police station, where she gave homicide investigators a lengthy statement about her relationship with Andersson and the events of the crime. (RR VIII – 57); *see* (RR XVII – SX 204-05). After appellant's statement concluded, the police arrested appellant and charged her with Andersson's murder. (RR VII – 120).

————————◆————————

## SUMMARY OF THE ARGUMENT

Appellant failed to overcome the presumption that she was adequately represented by counsel during the timeframe for preparing, filing, and presenting a motion for new trial because the record demonstrates that appellant was represented by retained and then appointed counsel during that time, and there is nothing to suggest that both of these attorneys failed to advise appellant regarding the postconviction process, including appellant's option to file a motion for new trial.

The trial court did not abuse its discretion by denying appellant's motion for mistrial following an allegedly-improper question by the prosecutor because the trial court's curative measures were sufficient to remedy any prejudice caused by

6

the question, and because the same subject was discussed elsewhere in the trial without objection.

Appellant failed to establish both prongs of the *Strickland* test for ineffective assistance of counsel because appellant did not demonstrate that her trial counsel's decision to call Julia Babcock to testify only in the punishment phase of trial was deficient, and that there is a reasonable probability that the outcome of appellant's trial would have been different but for that decision.

———————◆———————

## REPLY TO APPELLANT'S FIRST POINT OF ERROR

Appellant contends in her first point of error that her appeal should be abated and her case remanded to the trial court because appellant was deprived of appellate counsel during the timeframe for preparing, filing, and presenting a motion for new trial, given the timing of when appellant's trial counsel withdrew from appellant's case and when the trial court appointed appellant's present appellate counsel to represent appellant.

### I. *Standard of Review and Applicable Law Regarding a Defendant's Sixth Amendment Right to Counsel During the Timeframe for Preparing, Filing, and Presenting a Motion for New Trial*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel during all critical stages of her case. U.S. CONST. amend. VI; *see Mempa v. Rhay*, 389 U.S. 128, 134

(1967) (explaining that the Sixth Amendment right to counsel exists "at every stage of a criminal proceeding where the substantial rights of a criminal accused may be affected."). The time for preparing, filing, and presenting a motion for new trial is one such critical stage, given that a motion for new trial provides the defendant an opportunity to present to the trial court certain matters which could warrant a new trial, and may sometimes be necessary for the defendant to adduce facts which are not apparent in the record in order to preserve such issues for appellate review. *See Cooks v. State*, 240 S.W.3d 906, 910-11 (Tex. Crim. App. 2007).

In order to prevail on a claim of deprivation of counsel during the timeframe for preparing, filing, and presenting a motion for new trial, the defendant must affirmatively prove that she was not represented by counsel during that critical stage of the proceedings. *See Oldham v. State*, 977 S.W.2d 354, 362-63 (Tex. Crim. App. 1998); *Garcia v. State*, 97 S.W.3d 343, 347 (Tex. App.—Austin 2003, pet. ref'd). When the defendant was represented by counsel during trial, there is a rebuttable presumption that that attorney continued to adequately represent the defendant during the pertinent timeframe. *Cooks*, 240 S.W.3d at 911; *Oldham*, 977 S.W.2d at 363; *see Green v. State*, 264 S.W.3d 63, 69 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("Our appellate review of this issue beings with the presumption that trial counsel continued to effectively represent the [defendant]

8

during the 30-day window for filing a motion for new trial."). This presumption arises partly because a defendant's attorney remains the attorney of record on the defendant's case for all purposes until the trial court expressly permits him to withdraw, even if the attorney was originally retained or appointed for trial only. *See Ward v. State*, 740 S.W.2d 794, 796 (Tex. Crim. App. 1987) (explaining that a trial attorney's "legal responsibilities do not magically and automatically terminate at the conclusion of the trial"; rather, trial counsel continues to represent the defendant after trial until the trial court gives the attorney express permission to withdraw from the case); *Garcia*, 97 S.W.3d at 347.

Included within the rebuttable presumption of continued, effective representation is the notion that when a motion for new trial was not filed in a case, it was because the defendant, with the benefit of her counsel's representation, considered and rejected that option. *Cooks*, 240 S.W.3d at 911, n.6; *Oldham*, 977 S.W.2d at 363. This presumption is not rebutted when there is nothing in the record to suggest that the defendant was not actually represented during the time in question. *See Smith v. State*, 17 S.W.3d 660, 663 (Tex. Crim. App. 2000); *Oldham*, 977 S.W.2d at 362-63.

***II. Appellant has Failed to Rebut the Presumption that She was Adequately Represented by Counsel during the Timeframe for Preparing, Filing, and Presenting a Motion for New Trial***

The record in this case demonstrates that on June 27, 2013, appellant retained defense attorney Jack Carroll to represent her and that, on July 10, 2013, Carroll filed a Motion to Substitute Counsel to replace Juan Angel Guerra as appellant's trial counsel. (CR – 39). On May 7, 2014, appellant filed a Pauper's Oath on Appeal, asserting that she was without funds, property, or income to retain appellate counsel and petitioning the trial court to appoint appellate counsel to represent her. (CR – 765). The same day, May 7, 2014, in the Order section of appellant's Pauper's Oath on Appeal,[2] the trial court determined that appellant is indigent and appointed appellant's present appellate counsel to represent her. (CR – 765); *see* Appendix A. Two days later, on May 9, 2014, Carroll filed a written Notice of Appeal on appellant's behalf, and also filed a Motion to Withdraw as Attorney of Record, citing as his reason for withdrawal that appellant "does not presently have the financial resources to comply with all the terms of her agreement" with Carroll. (CR – 758-60). The trial court signed a written order granting Carroll's Motion to Withdraw on May 9, 2014. (CR – 763).

---

[2] Appellant's Pauper's Oath on Appeal, which also contains the trial court's order, is attached to this brief as Appendix A for this Court's convenience.

These dates signify that Carroll represented appellant from June 27, 2013, to May 9, 2014, when the trial court gave Carroll express permission to withdraw from appellant's case, and that appellant's present appellate counsel has represented appellant since the date of his appointment to appellant's case on May 7, 2014—overlapping with Carroll for two days. *See* (CR – 39, 758-60, 763, 765). Thus, given that Carroll did not withdraw from appellant's case until two days after appellant's present appellate counsel was appointed, there is a rebuttable presumption that appellant was adequately represented by counsel during the entire timeframe for preparing, filing, and presenting a motion for new trial. *See Cooks*, 240 S.W.3d at 911; *Oldham*, 977 S.W.2d at 363. Further, given that neither Carroll nor present appellate counsel filed a motion for new trial in appellant's case, it should also be presumed that either or both of those attorneys presented that option to appellant and that she rejected it. *Cooks*, 240 S.W.3d at 911, n.6; *Oldham*, 977 S.W.2d at 363.

Nothing in the record rebuts the presumption that appellant was effectively represented by both of her attorneys during the timeframe for preparing, filing, and presenting a motion for new trial. Accordingly, appellant has failed to demonstrate that she was unconstitutionally deprived of counsel during that critical stage of her case, in violation of the Sixth Amendment. *See Smith*, 17 S.W.3d at 663 (holding that the defendant failed to overcome the presumption that he was adequately

11

represented by counsel during the time for filing a motion for new trial when there was nothing in the record to suggest that the defendant was not counseled by his trial attorney regarding such a motion during that timeframe); *Benson v. State*, 224 S.W.3d 485, 497-98 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that the defendant failed to overcome the presumption that he was adequately represented by counsel during the timeframe for filing a motion for new trial when the record showed that "[the defendant] was officially represented by counsel at all times in the litigation" and there was nothing in the record to suggest that said counsel deficiently advised the defendant regarding the postconviction rules and process).

Appellant's first point of error should be overruled.

## REPLY TO APPELLANT'S SECOND POINT OF ERROR

Appellant contends in her second point of error that the trial court erred by failing to grant her motion for mistrial based on the prosecutor's allegedly-improper and prejudicial reference to an extraneous offense while appellant was testifying in the punishment phase of trial.

### I. *Standard of Review Regarding the Denial of a Defendant's Motion for Mistrial*

A trial court's decision to deny a defendant's motion for mistrial is examined on appeal for abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112

12

(Tex. Crim. App. 2007). A trial court abuses its discretion by denying a motion for mistrial only when that decision was arbitrary or unreasonable, or when no reasonable view of the record supports the trial court's ruling. *Webb*, 232 S.W.3d at 112; *Crawford v. State*, 355 S.W.3d 193, 198 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). A mistrial is a drastic remedy and, thus, is only appropriate in extreme circumstances where the objectionable event is "so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant." *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011); *Campos v. State*, Nos. 01-13-00415-CR, 01-13-00416-CR, 01-13-00417-CR, 2015 WL 162123, at *8 (Tex. App.—Houston [1st Dist.] Jan. 13, 2015, pet. filed).

An appellate court evaluating whether a mistrial should have been granted must balance three factors: (1) the severity of the misconduct and its likely prejudicial effect; (2) the curative measures employed by the trial court to remedy the prejudice; and (3) the likelihood that the jury would have assessed the same punishment absent the misconduct. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). But in conducting this analysis, the reviewing court may not substitute its own judgment regarding whether a mistrial was warranted for that of the trial court; rather, the reviewing court must view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it is within the zone of

reasonable disagreement. *Webb*, 232 S.W.3d at 112; *Crawford*, 355 S.W.3d at 198.

### II. *The Trial Court Did Not Err by Denying Appellant's Motion for Mistrial*

In the punishment phase of trial, the prosecutor had the following exchange with Julia Babcock, appellant's sudden passion expert witness:

> [Prosecutor:] Dr. Babcock, would it have changed your opinion had you learned that Ana Trujillo walked into Bodega's and bit Stefan Andersson on the face?
>
> [Babcock:] Hypothetically?
>
> [Prosecutor:] Yes. Let's say you learned that fact. Would that have changed your opinion in this case?
>
> [Babcock:] It depends on when --
>
> [Prosecutor:] Like in the middle of the day at lunchtime. He's eating tacos with his friends and Ms. Andersson [sic] walks in and bites him on the face. Would that change your opinion?
>
> [Babcock:] I guess that's a strange hypothetical.
>
> [Prosecutor:] It's strange behavior, truly; but I'm asking if you had learned that, would that have changed your opinion in this case?
>
> [Babcock:] No, because my opinion is based on her past history of having been abused and her - - the psychological symptoms she's manifested. (RR XI – 285-86).

Appellant did not object to this questioning by the State. (RR XI – 285-86).

Later in the punishment phase, during appellant's direct testimony, appellant's trial counsel asked her:

[Defense Counsel:] The prosecutor said yesterday, hypothetically, that you bit someone at Bodega's. Do you know what she's talking about?

[Appellant:] No. (RR XII – 144).

Then, while the State was cross-examining appellant, the prosecutor attempted to follow-up on appellant's claim that she was not aware of that particular biting incident:

[Prosecutor:] Now, I want to talk about Bodega's. You said you're not aware of that incident.

Isn't it true that there was a time when Stefan - - and you mention Anders Berkenstein, Stefan's really good friend?

[Appellant:] Yes.

[Prosecutor:] Wasn't there a time when Anders Berkenstein and Stefan were sitting in Bodega's having a beer and tacos and you come in - -

[Defense Counsel:] I'm going to object to this question, Your Honor.

[Trial Court:] Overruled.

[Prosecutor:] - - unprovoked and bite him on the cheek? He doesn't hit you. He doesn't push you off. He then does this and you walk out and they come and tend to him. Isn't that true?

[Appellant:] No.

[Prosecutor:] Certainly not the first time you're hearing it, right? I'm sure in preparation for trial, you're aware that Anders Berkenstein gave a formal statement to the homicide detectives, correct?

[Defense Counsel:] Your Honor, I object to relevance. I'm also going to object to the Prosecutor testifying.

15

[Trial Court:] That will be sustained. Move along.

[Defense Counsel:] Will you ask the jury to disregard?

[Trial Court:] There was no response. Jury is instructed to disregard it. Move along. I sustained it. Move along.

[Defense Counsel:] We ask the jury to disregard it.

[Trial Court:] Jury will disregard it. Move along.

[Defense Counsel:] Move for a mistrial.

[Trial Court:] Denied. (RR XII – 264-66).

As this exchange shows, the trial court sustained appellant's objection to the prosecutor's last question to appellant regarding the biting incident at Bodega's, and twice instructed the jury to disregard the question. (RR XII – 265-66). It is well established such prompt instructions to disregard usually suffice to cure any error associated with an improper question, even when the question pertains to an extraneous offense. *See Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) ("Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses."); *Hernandez v. State*, No. 01-13-00825-CR, 2014 WL 6783753, at *5 (Tex. App.— Houston [1st Dist.] Dec. 2, 2014, no pet.). Further, adding to the curative effect of the trial court's oral instructions to disregard, the court also instructed the jurors in the court's written punishment charge that they could consider evidence of an extraneous crime or bad act attributed to appellant only if the State proved beyond

16

a reasonable doubt that appellant committed that act. (CR – 745). There is no indication in the record that any of these instructions were ineffective or that the jury failed to heed them; rather, it is presumed that the jury understood and followed the instructions absent affirmative evidence to the contrary. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (explaining that appellate courts presume that the jury followed the trial court's instructions in the manner presented and that, to rebut that presumption, the appellant must point to evidence showing that the jury failed to follow the trial court's instructions).

Additionally, the fact that testimony related to the biting event at Bodega's came in elsewhere during appellant's trial without objection, and was even prompted by the defense during appellant's direct testimony, amerliorated the error and demonstrates to a high degree of certainty that the jury would still have given appellant a life sentence even without the prosecutor's complained-of question. *See Nenno v. State*, 970 S.W.2d 549, 563 (Tex. Crim. App. 1998) (rejecting the defendant's claim that the prosecutor's questions were improper and so prejudicial as to require a mistrial and stating that "[e]rror is defaulted when the same evidence is presented elsewhere without objection."), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999); *Madden v. State*, No. 02-08-007-CR, 2009 WL 2857269, at *4 (Tex. App.—Fort Worth Sept. 3, 2009, pet. ref'd) (not designated for publication) (holding that the trial court did not err in

17

denying the defendant's motion for mistrial following an improper question by the State when, among other considerations, "similar evidence was admitted elsewhere without objection."); *Lee v. State*, 779 S.W.2d 913, 916 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd) (overruling the defendant's mistrial point of error when the trial court instructed the jury to disregard the prosecutor's statement, which was sufficient to cure any harm, and stating that, "[i]n any case, the later admission of the same objection cured any error in admission of the first statement."). Accordingly, the prosecutor's question was not so prejudicial and inflammatory that the trial court's remedial measures could not cure any harm that resulted from it and, thus, the trial court did not abuse its discretion by denying appellant's motion for mistrial on that basis.

Appellant's second point of error should be overruled.

## REPLY TO APPELLANT'S THIRD POINT OF ERROR

Carroll, appellant's trial counsel, called Babcock, a professor and licensed psychologist, as an expert witness to testify in the punishment phase of appellant's trial regarding domestic violence in general; domestic violence in appellant's previous relationships and, supposedly, in her relationship with Andersson; and whether appellant's "explosive" actions in murdering Andersson could have been the result of appellant's "history of abuse[,]" which "built up over time" until it culminated in a violent outburst of sudden passion. *See generally* (RR XI – 224-

18

50, 279-80) ("But I do want to talk about the history of abuse and what led up to that explosive tragic night....To understand it in context, that it didn't come out of the blue but guilt up over time...."). Appellant argues in her third point of error, however, that Carroll was ineffective for failing to call Babcock to testify about those topics in the guilt stage of the trial because "[t]he testimony of Ms. Babcock would have given context for [a]ppellant's subjective view (based on her history of sexual abuse and post traumatic stress syndrom [sic]) to the term 'reasonable apprehension' of danger" in the self-defense instructions of the guilt-phase jury charge. (Appellant's Brief – 21-22) (parenthetical in original).

## I. *Standard of Review and Applicable Law Regarding Ineffective Assistance of Counsel*

The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to have the effective assistance of counsel in her defense. U.S. CONST. amend. VI; *see Strickland v. Washington*, 466 U.S. 668, 687 (1984); *McMann v. Richardson*, 397 U.S. 759, 771 (1970) ("[T]he right to counsel is the right to *effective* assistance of counsel.") (emphasis added). In *Strickland*, the United States Supreme Court declared that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. The Court announced a two-part test to gauge the effectiveness of defense counsel: (1) whether

19

counsel's representation falls "below an objective standard of reasonableness," and (2) whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A defendant must prove both elements of this test by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To prove that counsel was ineffective under the first prong of *Strickland*, a defendant must first show that counsel's performance was objectively unreasonable under the prevailing professional norms. *Strickland*, 466 U.S. at 688. To determine whether the defendant has established this, a reviewing court must examine the totality of counsel's conduct at the time of the representation, and must evaluate the reasonableness of counsel's actions from counsel's perspective at the time of that representation, without focusing on isolated acts or omissions. *Strickland*, 466 U.S. at 689; *Robertson v. State*, 187 S.W.3d 475, 482 (Tex. Crim. App. 2006); *Thompson*, 9 S.W.3d at 813. An appellate court must afford great deference to trial counsel, and should avoid the "distorting effects of hindsight" by strongly presuming that counsel's conduct was competent, reasonable, and within a wide range of acceptable representation and trial strategy. *Strickland*, 466 U.S. at 689; *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). A defendant bears the burden to rebut this presumption of effective assistance, and can only do

so with allegations that are firmly rooted in the record. *Thompson*, 9 S.W.3d at 814.

A reviewing court must avoid speculating as to trial counsel's strategies and motivation in the face of a silent record. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Weaver v. State*, 265 S.W.3d 523, 538 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). If the record does not contain direct evidence of trial counsel's reasons for the complained-of act or omission, an appellate court will assume that counsel's actions were soundly calculated if any reasonably strategic motivation can be imagined. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Thompson*, 9 S.W.3d at 814. Further, in the absence of evidence establishing the motives behind counsel's performance, a reviewing court will find counsel's representation deficient "only if the conduct was so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Harrison v. State*, 333 S.W.3d 810, 814 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). However, "when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law," regardless of whether the record exhibits the attorney's subjective reasoning for his representation. *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

If the defendant successfully shows that her counsel's performance was deficient, she must then affirmatively demonstrate that her attorney's actions prejudiced her to be afforded relief. *Thompson*, 9 S.W.3d at 812. A defendant establishes prejudice when she proves that there is a reasonable probability that the result of the proceeding would have been different had counsel's performance been proficient and, thus, the defendant was deprived of a fair trial. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A "reasonable probability" is a probability which is sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694; *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012). A reviewing court must consider the totality of the evidence admitted in the case when evaluating whether the defendant was prejudiced by her counsel's deficient performance, given that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695; *Frangias v. State*, 413 S.W.3d 212, 218 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

## II. Appellant Failed to Prove that her Trial Counsel was Deficient under the First Prong of Strickland

Appellant has failed to meet her burden to prove that Carroll was deficient under the first prong of *Strickland* because the record is wholly undeveloped regarding Carroll's subjective, strategic motivations for calling Babcock to testify only in the punishment phase. The Texas Court of Criminal Appeals has

consistently explained that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003); *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Thus, absent evidence of Carroll's strategic reasons for calling Babcock in the punishment phase to support of appellant's claim of sudden passion instead of in the guilt phase to support of appellant's claim of self-defense, this Court should presume that Carroll's conduct was motivated by reasonably sound trial strategy because at least one may be imagined. *Garcia*, 57 S.W.3d at 440; *Thompson*, 9 S.W.3d at 814.

For example, given that Babcock's assessment was that appellant had gradually developed an overly-aggressive "stance" towards people as a result of "repeatedly being victimized and traumatized and sexually abused and controlled by men[,]" which was exacerbated by appellant's "self-medication" with alcohol, and that that compounded abuse resulted in appellant's "explosive[,]" violent, and "excessive" "overreact[ion]" to Andersson when he allegedly belittled appellant and "attempt[ed] to stop [appellant] from leaving[,]" Carroll may have reasonably determined that Babcock's testimony would have benefited appellant more regarding the punishment issue of sudden passion than it would have for the guilt-phase issue of self-defense—which would have required the jury to believe that Andersson's actions immediately preceding his murder constituted a use or

23

attempted use of deadly force against appellant. (RR XI – 246-50, 279-80); *compare* TEX. PENAL CODE ANN. § 19.02(a) *and* TEX. PENAL CODE ANN. § 19.02(d) (explaining that the defendant may lessen murder to a second-degree felony offense if she establishes by a preponderance of the evidence in the punishment phase that she caused the death under the immediate influence of sudden passion arising from an adequate cause) *with* TEX. PENAL CODE ANN. § 9.31 *and* TEX. PENAL CODE ANN § 9.32 (explaining that a person is justified to use deadly force in self-defense when and to the degree the actor reasonably believed the deadly force was immediately necessary to protect herself from another person's use or attempted use of unlawful deadly force against her); *see Vann v. State*, 853 S.W.2d 243, 248 (Tex. App.—Corpus Christi 1993, pet. ref'd) (recognizing that a rational jury could conclude that a murder defendant acted while under the influence of sudden passion, and that "the victim provoked [the defendant] physically and emotionally and that the combination of the victim's affairs, verbal, abuse, and physical provocation rendered [the defendant] incapable of cool reflection at the moment she killed the victim, when the record contained expert testimony that the defendant "suffered from battered wife's syndrome and post traumatic stress disorder."); *see also Todd v. State*, No. 05-95-00994-CR, 1998 WL 196187, *5 (Tex. App.—Dallas 1998, pet. ref'd) (not designated for publication) (acknowledging that evidence that "the defendant had suffered verbal,

24

physical, emotional, and sexual abuse from [the victim] for three years" and that "[the victim] intended to further sexually abuse [the defendant] the night of the shooting" and "intended to take [the victim's and the defendant's] infant son...with [the victim] on a burglary the following morning" were sufficient for a rational factfinder to conclude that the defendant acted under the immediate influence of sudden passion arising from adequate cause).

In light of this reasonable explanation for why Carroll proffered Babcock's testimony in the punishment phase instead of in the guilt phase, Carroll's actions in doing so were supported by sound tactics and were not so outrageous that no competent attorney would have engaged in them. *See Hale v. State*, 140 S.W.3d 381, 393-94 (Tex. App.—Fort Worth 2004, pet. ref'd) (rejecting the defendant's claim that his trial counsel was deficient for failing to call the defendant's suggested witnesses in the guilt phase of trial when a reasonable trial strategy supported the attorney's decision to decline to do so). Further, because the record is devoid of affirmative evidence demonstrating that Carroll's subjective motivations were actually deficient, this Court should presume that Carroll's actions were reasonable and within the wide range of acceptable representation. *See Anderson v. State*, 193 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (holding that the defendant failed to prove ineffective assistance of counsel when the record was silent as to whether the defense attorney acted in a

25

reasonably professional manner in not calling witnesses).  Accordingly, appellant failed to satisfy the first prong of *Strickland*, and her third point of error should be overruled at this juncture.

### III. *Appellant Failed to Prove that her Trial Counsel's Allegedly-Deficient Performance Prejudiced her under the Second Prong of* Strickland

Aside from the fact that the silent record in this case does not support appellant's claim that Carroll was deficient for failing to call Babcock in the guilt phase, appellant has failed to demonstrate that she was prejudiced by Babcock's absence in that portion of the trial because the record demonstrates that there is no reasonable probability that the outcome of appellant's trial would have been different had Babcock testified then.

First, the State's evidence that appellant was guilty of murder and that she did not act in self-defense was overwhelming.  Such evidence included testimony that appellant was intoxicated, belligerent, and verbally abusive towards Andersson and others immediately before the murder; numerous photographs of Andersson's horrific injuries and extensive defensive wounds; photographs of appellant's clear lack of injuries or defensive wounds; photographs of the crime scene and attendant expert testimony that explained that appellant dealt Andersson most of the fatal blows to his head and face while Andersson was already lying on the floor; appellant's statement to homicide investigators wherein she admitted that she was on top of Andersson while she beat him with her heel, and that Andersson's

26

supposed conduct which provoked appellant's attack was only that he belittled her and "bear hug[ged]" her to prevent her from leaving Andersson's home. *See, e.g.,* (RR V – 128-39, 160-64); (RR VI – 118-29, 139-58); (RR VII – 25-26); (RR VIII – 24, 76-98, 105-19); see (RR XVII – SX 44-45, 115-19, 122, 125-46, 169-75, 178, 192-99, 204-05). There is no reasonable probability that the strength of this evidence would have been diminished by Babcock's testimony—which conceded that appellant's actions were excessive and an overreaction to Andersson's alleged provocation—had Babcock testified in the guilt phase. *See* (RR XI – 246-50, 279-80).

Second, there is no reasonable probability that Babcock's testimony would have affected the outcome of the guilt phase given that Carroll had already undertaken extensive, myriad, and persistent efforts to prove and emphasize appellant's self-defense claim throughout that portion of the trial. For example, Carroll cross-examined many of State's witness about such topics as: whether Andersson became or could have become angry or aggressive when he drank; the fact that Andersson was legally intoxicated at the time of his death; whether Andersson could have been in an aggressive or agitated state because of his prescription medication, or the lack thereof; whether appellant's demeanor after the murder was consistent with her claims that Andersson had assaulted her and that she had been in fear for her life; whether appellant had defensive bruises or

27

wounds on her hands, forearms, face, legs, and torso as a result of an assault by Andersson; whether the homicide investigators had attempted to investigate and corroborate appellant's defensive claim that "[Andersson] grabbed her in a bear hug and she defended herself"; and whether it was possible that appellant could have caused Andersson's injuries as she defended herself from him, as she contended. *See, e.g.,* (RR V – 231-32); (RR VI – 45-48, 167-71); (RR VII – 100-112); (RR VIII – 23-25, 27-32, 36-44, 54, 59-60, 123-24, 127-29).

Carroll elicited from appellant's next-door-neighbor that the loud, angry, masculine yelling that the neighbor overheard in her unit, coming from Andersson's unit around the time of the murder, did not sound like a "man shrieking in pain" but rather sounded like "just an angry man." (RR VI – 24-25). Carroll ensured that appellant's entire recorded statement to homicide investigators was admitted and published to the jury, wherein appellant described her self-defense claim at length. (RR V – 41-42); (RR VI – 88-89, 144-46); *see* (RR XVII - SX 204-05). Carroll admitted appellant's medical records from the Harris County Jail, which recorded that appellant had "generalized bruises" on her body, face, hands, and legs, and contusions on the back of her head, and called the nurse who viewed and documented those injuries to testify. (RR VIII – 31-35); (RR IX – 57-62, 78-80); *see* (RR XVIII-XIX DX 8-8A).

Carroll also called nine other witnesses—ten total—to testify in the defense's case-in-chief. *See generally* (RR I – 9-10). Among those other witnesses were Chris Martinez, a martial arts expert, whom Carroll proffered to perform a self-defense demonstration to illustrate how the murder could have occurred as appellant attempted to defend herself from Andersson, as appellant had described. (RR IX – 48-51, 104-06, 112-115, 120-25, 154-69, 171-75). Additionally, Carroll called Dr. Lee Ann Grossberg, a forensic pathologist, to qualify the findings of the State's forensic pathologist, and to explain that Andersson's wounds, especially his defensive wounds, could have been caused while Andersson was holding, restraining, or attacking appellant. (RR IX – 176-203).

Considering all of these measures aimed at proving that appellant justifiably killed Andersson in self-defense, and the fact that Babcock's testimony might actually have harmed appellant's self-defense claim by conceding that appellant's conduct was excessive and an overreaction, appellant's claim that she was prejudiced by Carroll's strategic decision to have Babcock testify only in the punishment phase of trial lacks merit. *C.f. Perez v. State*, 310 S.W.3d 890, 896 (Tex. Crim. App. 2010) (finding that the defendant failed to establish prejudice from his attorney's failure to call an alibi witness when the evidence that the jury did not hear regarding that issue did not undermine the court's confidence in the

29

outcome of the defendant's trial); *Stokes v. State*, 298 S.W.3d 428, 431-32 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (denying the defendant's claim of ineffective assistance based on the attorney's supposed failure to investigate, interview witnesses, and call witnesses at trial, given the defendant's failure to establish that the proposed investigation and witnesses' testimony would reasonably have affected the outcome of the proceedings). Thus, appellant has failed to satisfy the second prong of *Strickland*, and her third point of error should be overruled.

——————————◆——————————

## CONCLUSION AND PRAYER

For the foregoing reasons, the State respectfully submits that appellant failed to overcome the presumption that she was adequately represented by counsel during the timeframe for preparing, filing, and presenting a motion for new trial; that the trial court appropriately denied appellant's motion for mistrial; and that appellant failed to establish both prongs of the *Strickland* test for ineffective assistance of counsel. Thus, the State respectfully prays that this Court will overrule appellant's three points of error, and will affirm appellant's conviction.

Respectfully submitted,


**DEVON ANDERSON**
District Attorney
Harris County, Texas


   /s/ Melissa Hervey
**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number:  24053741
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Hervey_Melissa@dao.hctx.net

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Texas Rule of Appellate Procedure 9.4(i), the undersigned attorney certifies that there are 6,789 words in the foregoing computer-generated document, based upon the representation provided by Microsoft Word, the word processing program that was used to create the document, and excluding the portions of the document exempted by Rule 9.4(i)(1).

/s/ Melissa Hervey
**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number:  24053741
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Hervey_Melissa@dao.hctx.net

## CERTIFICATE OF SERVICE

This is to certify that the undersigned counsel has directed the e-filing system eFile.TXCourts.gov to serve a true and correct copy of the foregoing document upon Douglas M. Durham, appellant's attorney of record on appeal, on January 30, 2015, at the following e-mail address, through the electronic service system provided by eFile.TXCourts.gov:

durham.doug@yahoo.com

    /s/ Melissa Hervey
**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number:  24053741
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Hervey_Melissa@dao.hctx.net

## **APPENDIX A**

Appellant's Pauper's Oath on Appeal

# PAUPER'S OATH ON APPEAL

CAUSE NO.: _172162/_      OFFENSE: _Murder_

THE STATE OF TEXAS      _338_ DISTRICT COURT

VS.

_Ana Trujillo_      OF

HARRIS COUNTY, TEXAS

TO THE HONORABLE JUDGE OF SAID COURT:

     NOW COMES _Ana Trujillo_, defendant in the above styled and numbered cause, and states under oath that he is without funds, property or income. The defendant respectfully petitions the court to: (check all that apply)

     [✓] Appoint appellate counsel to represent him.

     [ ] Asks the court to order that a free record be provided to him.

_Ana Trujillo_

DEFENDANT

SUBSCRIBED AND SWORN to before me, this _7_ day of _May_, A.D., 20_14_.

_Wanda M Burrell_

DEPUTY DISTRICT CLERK _Law Librarian III_
_338_ DISTRICT COURT _TDCJ / Plane Unit_
HARRIS COUNTY, TEXAS _Liberty County, TX_

WANDA M. BURRELL
Notary Public
STATE OF TEXAS
My Comm. Exp. April 12, 2015
NOTARY WITHOUT BOND

## ORDER

On _5-7-2014_ the court conducted a hearing and found that the defendant is indigent

[✓] The court orders that _Doug Durham_ is appointed to represent defendant/appellant on appeal.

[ ] The court reporter is ordered to prepare and file the reporter's record without charge to the defendant/appellant.

It is further ordered that the clerk of this court mail a copy of the order to the court reporter: _Jill Hambly_, by certified mail return receipt requested.

JUDGE PRESIDING
_338_ DISTRICT COURT
HARRIS COUNTY, TEXAS

## AFFIRMATION

I, _Doug Durham_, Attorney at Law, swear or affirm that I will be solely responsible for writing a brief and representing the appellant on appeal. If I am not able to preform my duties as appellate counsel, I will notify the court immediately so that the court may take the appropriate action as deemed necessary.

_Doug Url_ _5627845O_

ATTORNEY (SIGNATURE)      BAR/SPN NUMBER

_2800 Post Oak Blvd Ste 4100_ _TX_ _72002_

ADDRESS _Houston, Tx 77056_      CITY      STATE      ZIP

PHONE _832 390 2350_      FAX NUMBER

_durham.doug@yahoo.com_

EMAIL ADDRESS

SWORN TO AND SUBSCRIBED BEFORE ME ON _May 14, 2014_

DEPUTY DISTRICT CLERK (SIGNATURE)      765

DISTRICT CLERK